IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| United States of America, | ) | CR 17-00179-TUC-CKJ (EJM) |
| Plaintiff, | ) ) | **REPORT AND RECOMMENDATION** |
| vs. | ) ) | |
| Ricardo Adrian Guerrero-Castillo, | ) ) | |
| Defendant. | ) ) | |

Pending before the Court is the defendant's motion to dismiss the indictment filed pursuant to 8 U.S.C. § 1326(d), which alleges that his 2001 removal that stripped him of his Legal Permanent Resident Status was defective, and therefore, violated his due process rights. During the defendant's 2001 removal proceeding, the immigration judge concluded that the defendant's drug conviction for simple possession of marijuana constituted an aggravated felony and, for that reason, he was not eligible for cancellation of removal. The defendant asserts that a subsequent Supreme Court case holding that simple drug possession is not an aggravated felony should be applied retroactively to his removal proceedings. The defendant claims that this change in the law made him eligible for cancellation of removal and, for that reason, his 2001 removal was defective and the indictment should be dismissed.

The law in the Ninth Circuit is clear that a change in the law that impacts whether an alien is even removable should be applied retroactively in assessing whether the removal was lawful. The reason for applying the change in law retroactively is because the alien may have been removed when s/he should not have been. But that is not the

issue here. The issue in the case at hand is whether a change in the law that affected this defendant's eligibility for cancellation of removal - a discretionary decision - should or can be applied retroactively to challenge the lawfulness of his removal proceeding.

For the reasons that follow, this Court concludes that the specific change in the law affecting the defendant's eligibility for cancellation of removal does not apply retroactively and, for that reason, the defendant cannot use the change in the law to attack the validity of his removal order. Additionally, the Court concludes that the defendant cannot show he suffered prejudice even if the change in law applied retroactively and rendered the removal order defective. Accordingly, this Court recommends that the motion to dismiss the indictment be denied.

**FACTUAL BACKGROUND**

On January 13, 2017, the defendant, Ricardo Adrian Guerrero-Castillo, was arrested for illegally attempting to enter the United States in violation of 8 U.S.C. §§ 1326(a) and (b)(1). He was charged with that felony offense in a criminal complaint dated January 17, 2017. A federal grand jury sitting in Tucson, Arizona returned an indictment on February 8, 2017, charging the defendant with the same offense. Both the criminal complaint and the indictment allege that the defendant was previously deported and removed from the United States through Nogales, Arizona, on or about November 22, 2016.

On July 29, 2017, the defendant filed a motion to dismiss the indictment pursuant to 8 U.S.C. § 1326(d), based on his unlawful 2001 removal which stripped him of his lawful permanent resident status. The defendant argues that the 2001 removal order was defective because the immigration judge erroneously concluded that the defendant's drug conviction for simple possession of marijuana constituted an aggravated felony and, as such, he was not eligible for cancellation of removal. The defendant concedes that at the time of his removal proceeding in 2001, the Fifth Circuit precedent was that simple drug possession was an aggravated felony which made an alien ineligible for cancellation of removal. However, the defendant argues that the Supreme Court's decision in *Carachuri-*

*Rosendo*, 560 U.S. 563, 582 (2010), holding that simple drug possession is not an aggravated felony, should be applied retroactively to his removal proceedings. The defendant claims that this change in the law made him eligible for cancellation of removal and, for that reason, his 2001 removal was defective. The defendant argues that his subsequent removals, including the 2016 removal which is alleged in the indictment, are also invalid because they were premised solely on the invalid 2001 removal order. Defendant also argues that he suffered prejudice as a result of the defective removal because it is plausible that he may have been granted cancellation of removal given that he was brought to the United States as an infant, and it is the only country he knew prior to his removal. For those reasons, the defendant argues that the indictment should be dismissed.

The government argues that the motion to dismiss should be denied for the following reasons. First, the government argues that the defendant has not identified any error in his more recent 2016 removal, which is the basis for the charge in the indictment - not the 2001 removal order. Essentially, the government argues that the defendant's subsequent removals cure any defect in the 2001 removal.[1] Second, the government claims that the defendant did not exhaust the available administrative and/or judicial remedies to challenge the validity of his 2001 removal order. Specifically, the defendant withdrew his appeal of his 2001 removal, and never challenged his 2001 removal during subsequent removal proceedings. Third, the government argues that the defendant cannot show either that the 2001 removal order violated his due process rights or that he suffered

---

[1] Because the Court finds that the 2001 removal was not defective, this Court will not address this argument raised by the government. The Court is skeptical that if the 2001 removal is defective, then subsequent removals cure that defect. The subsequent removals are based solely on the fact that the defendant did not have legal status in the United States; but he only lost that status because of the defective 2001 removal. Stated another way, if the defendant should not have been removed in 2001 based on the misdemeanor drug conviction, then he could not have been removed subsequently because he still would have had legal status in the United States.

prejudice as a result. The government argues that the defendant was afforded due process during the removal proceeding because the immigration judge, based on binding circuit precedent at the time, properly advised the defendant that he was not eligible for cancellation of removal because his drug possession conviction was an aggravated felony. The government argues that a subsequent change in the law as to eligibility for cancellation of removal does not apply retroactively to enable the defendant to challenge his removal order under 8 U.S.C. § 1326(d). Even if this change in the law applied retroactively, the government also argues the defendant cannot show prejudice because he cannot make a plausible showing that he may have been granted cancellation of removal given his numerous arrests and convictions shortly before his 2001 removal.

On September 13, 2017, a hearing was held on the motion to dismiss. The defendant was the only witness who testified at the hearing. The defendant, who is now 38 years old, testified he was brought to the United States from Mexico by his mother when he was eight months old. (Tr. at 14.)[2] He never knew his biological father, and was raised by his mother and his stepfather. (*Id*. at 20.) He obtained Legal Resident Status in 1987 when he was 8 years old. (*Id*. at 14.) The defendant went to grade school in California and middle school in Texas; he dropped out of school in the 9th grade. (*Id*. at 15-16, 24-25, 31, 61-62.)[3] The defendant testified that he enjoyed school, liked to draw, worked hard at his English and pronunciation, and was good at sports. (*Id*. at 24-28.) He registered for the United States Army when he was 18 years old, but was not accepted because he had legal problems. (*Id.* at 31-32, 87.)

The defendant and his (common law) wife had their first child when the defendant was 19 years old, and their second child when the defendant was 21 years old. (*Id*. at 22-

---

[2] Citations to "Tr." followed by the page number are to the transcript of the motion hearing held on 9/13/17.

[3] The defendant admitted over 100 photographs documenting his childhood in the United States -- specifically, pictures of family members, friends, and classmates. (Defense Ex. C.)

- 4 -

24; Defense Ex. A and B.)  His children were ages 2 and 4 when he was removed from the United States in 2001.  (Tr. at 22-24.)  His wife brought the children to visit him in Mexico one time after he was deported.  (*Id*. at 57-58.)  For a while he communicated with his children via letters, text messages and on Facebook, but he has lost contact with his children.  (*Id*. at 57-58, 88.)

The defendant testified that he started using marijuana as a teenager and was a frequent user.  (*Id*. at 43.)  He believes he was addicted to marijuana.  (*Id*. at 44.)  He testified that marijuana did not make him violent; rather it relaxed him.  (*Id*. at 43.)  The defendant also testified about the circumstances surrounding his arrests and convictions detailed in a Federal Presentence Report.  (*Id*. at 44-48, 62-87; Government Ex. 1.)  The defendant admitted to all of his arrests and convictions, although he disputed (or could not recall) the facts that led to certain arrests and convictions (primarily arrests and/or convictions for burglary, theft, and assault).  (*Id*. at 63-74, 77, 85-87.)  He did not dispute that he slapped his wife during an argument and that led to an assault conviction in 1999.  (*Id*. at 40-41, 81-82.)  He also admitted that the possession of marijuana conviction that led to his removal was based on his possession of between five and fifty pounds of marijuana.  (*Id*. at 82.)

With respect to his 2001 removal hearing, the defendant testified that he asked the immigration judge for cancellation of removal, and the judge told him that the appeals court (the Fifth Circuit) always wins  (*Id.* at 49.)  Nevertheless, the defendant appealed the removal order, but ultimately withdrew the appeal.  (*Id*. at 49-51.)  He explained that he represented himself during the immigration proceedings because he could not afford an attorney.  (*Id*. at 50-51.)

The defendant's recollection of the 2001 removal hearing is pretty accurate.  At that hearing, the immigration judge advised the defendant that, pursuant to Fifth Circuit precedent, his state drug felony conviction was considered a drug trafficking offense and an aggravated felony.  (Defendant's Motion to Dismiss, Ex. 1 at 8.)  For that reason, the judge advised the defendant that "there is no waiver or pardon that is available for this."

(*Id.*) The defendant told the judge that, based on BIA precedent, he was requesting cancellation of removal because he was convicted of simple possession of marijuana. (*Id.*) The judge told the defendant he was familiar with the BIA cases, but that the Fifth Circuit had come to a different conclusion and that circuit precedent had to be followed by an immigration court based in Texas. (*Id.*) The judge concluded that the defendant was not eligible for cancellation of removal, but advised the defendant that he could certainly appeal to the BIA. (*Id.* at 9.) The judge did note while there is a dispute between the BIA and the Circuit Court, "the Circuit Court always wins those." (*Id.*)

## **DISCUSSION**

One of the elements of a violation of 8 U.S.C. § 1326 is a prior removal order. An alien in a removal proceeding has a due process right to be informed of his or her ability for relief from removal. *United States v. Vidal-Mendoza*, 705 F.3d 1012, 1015 (9th Cir. 2013). Because this duty to inform the alien of potential relief from removal is mandatory, an immigration judge's failure to discharge it is a denial of due process that invalidates the underlying deportation proceeding. *Vidal-Mendoza*, 705 F.3d at 1015. That said, "Congress has strictly limited an alien's ability to bring a collateral challenge" to a removal order in a § 1326 prosecution. *Id.* An alien charged with violating 8 U.S.C. § 1326 may not attack the validity of the predicate removal order unless the alien demonstrates that (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." *Id.* (quoting 8 U.S.C. § 1326(d)). Because the entry of the removal order was not fundamentally unfair, the Court need not address exhaustion or the opportunity for judicial review.[4]

---

[4] An alien is excused from demonstrating exhaustion of administrative remedies if the immigration judge failed to provide information about the alien's eligibility for relief. *Vidal-Mendoza*, 705 F.3d at 1015. Likewise, that same error will be deemed to have deprived the alien of the opportunity for judicial review. *Id.* In that situation, these two requirements are

- 6 -

An underlying removal order is fundamentally unfair for purposes of § 1326(d) if the alien's due process rights were violated by defects in his underlying deportation proceeding, and he suffered prejudice as a result of the defects. *Id.* at 1016. The Ninth Circuit has held that the failure to inform an alien of potential relief from removal meets the first prong of this test, and an alien may meet the second prong by demonstrating that he had a plausible ground for that potential relief. *Id.* As discussed below, the defendant has not met his burden in establishing either a due process violation or prejudice.

**A. The Removal Order Did Not Violate Due Process.**

The Ninth Circuit has held that an immigration judge's "duty is limited to informing an alien of a reasonable possibility that the alien is eligible for relief at the time of the hearing." *United States v. Lopez-Velasquez*, 629 F.3d 894, 895 (9th Cir. 2010) (en banc). That duty does not require the immigration judge to inform an alien "of relief for which he was not then eligible and for which he would become eligible only [because] of a change in the law . . . ." *Lopez-Velasquez*, 629 F.3d at 901. The court reasoned that immigration judges "are not expected to be clairvoyant" and predict future changes in the law. *Id.* at 900 (*quoting Moran-Enriquez v. INS*, 884 F.2d 420, 422 (9th Cir. 1989)). Accordingly, a due process violation does not occur when an immigration judge "had no duty to inform him of relief for which he was not eligible . . . ." *Id.* at 899. Rather, "when intervening law renders an alien eligible for discretionary relief for which he was

---

deemed established for purposes of a § 1326(d) motion because the immigration judge's error never gave the alien a meaningful opportunity to pursue administrative or judicial review. *Id.* Here, the immigration judge advised the defendant that he was ineligible for cancellation of removal. However, the judge did advise the defendant of his right to appeal the denial of cancellation of removal, even though the judge expressed great pessimism about the defendant's chances of success given the Fifth Circuit precedent. And, as the government points out, the defendant dismissed his appeal and has never sought administrative remedies in subsequent removal proceedings. All that said, practically speaking, exhaustion of administrative and judicial remedies is closely tied to whether the immigration judge erred in advising the defendant of his eligibility for cancellation of removal. Again, because the immigration judge did not err in that regard, this Court need not address the issue of exhaustion of administrative and judicial remedies.

- 7 -

ineligible at the time of his deportation hearing, the proper remedy is for the alien to file a motion to reopen." *Id.* at 899-900.

In *Vidal-Mendoza*, the Ninth Circuit reiterated that "an [immigration judge's] duty is limited to informing an alien of a reasonable possibility that the alien is eligible for relief [*i.e.*, cancellation of removal] at the time of the hearing." 705 F.3d at 1016. The Court further held that a "post-removal change in law" as to eligibility for cancellation of removal does not mean that the removal proceedings violated due process - - assuming, of course, that the law was clear at the time of removal that the alien was not eligible for cancellation of removal. *Id.*[5]

The Ninth Circuit's decision in *United States v. Pallares-Galan*, 359 F.3d 1088 (9th Cir. 2004) is not in conflict with this precedent. In that case, the immigration judge concluded that the defendant's conviction was an aggravated felony and, as such, he was not eligible for cancellation of removal. *Pallares-Galan*, 359 F.3d at 1093. Importantly, there was no circuit precedent on this issue at the time of the removal hearing. *Id.* at 1093, 1099-1103. The Ninth Circuit held that the immigration judge committed legal error in concluding that defendant's prior conviction was an aggravated felony, and therefore, the defendant could collaterally attack his removal order based on the immigration judge's failure to advise him of his eligibility for cancellation of removal. *Id.* at 1102-1103.

To be clear, *Pallares-Galan* was not addressing whether the alien was in fact removable; rather, like here, the issue was whether the Immigration Judge's advisement/ conclusion about the alien's eligibility for cancellation of removal comported with due

---

[5] The defendant relies on *United States v. Ochoa*, 861 F.3d 1010 (9th Cir. 2017) in arguing that a removal is fundamentally unfair if an alien was removed when he should not have been. (Motion to Dismiss at 7.) However, *Ochoa* does not help the defendant because that case addressed whether the alien's prior convictions made him removable (*i.e.*, whether he was removed when he should not have been). Here, the issue is not whether the defendant was removable (which he clearly was based on the drug conviction), but rather whether he was eligible for the discretionary relief of cancellation of removal.

- 8 -

process given the subsequent change in the law. However, *Pallares-Galan* differs from the case at hand in a significant respect. In that case, there was no circuit precedent addressing whether the defendant's conviction made him eligible for cancellation of removal. In other words, at the time of the alien's removal hearing, the law in the circuit on that point was unsettled. The Ninth Circuit settled the law in concluding that the immigration judge erred in concluding that the alien's conviction was an aggravated felony which made him ineligible for cancellation of removal.

By contrast, here, at the time of the 2001 removal, the law was not unsettled because there was long-standing Fifth Circuit precedent holding that a conviction for drug possession was an aggravated felony which made the defendant ineligible for cancellation of removal. *See United States v. Hinojosa-Lopez*, 130 F.3d 691, 694 (5th Cir. 1997.) Because the law was crystal clear in the Fifth Circuit that the defendant was not eligible for cancellation of removal at the time of his removal hearing, the immigration judge was not required to be clairvoyant in anticipating that the Supreme Court would change the law (nine years later in 2010). Because this change in the law does not apply retroactively to the defendant's removal proceeding, the 2001 removal did not violate due process. Accordingly, the Court recommends that the motion to dismiss the indictment be denied.

**B.     Even If the Removal Order Was Defective, the Defendant Cannot Show That He Suffered Prejudice.**

Even if the Supreme Court's decision in *Carachuri-Rosendo* applied retroactively and thus rendered the defendant's 2001 removal defective, the Court finds that the defendant has not suffered prejudice because he has not made a plausible showing that he would have been granted cancellation of removal. For purposes of a § 1326(d) motion to dismiss an indictment, a district court must basically put itself in the position of an immigration judge in assessing whether it was plausible that an alien would have been granted cancellation of removal. *Pallares-Galan*, 359 F.3d at 1104 (a court addressing a § 1326(d) motion to dismiss an indictment must balance the positive and negative equities

to evaluate the plausibility of an alien's claim for discretionary relief from removal). The defendant bears the burden in proving that it is plausible that cancellation of removal would have been granted. *Id.* at 1103-1104. The defendant has not met his burden.

Clearly, at the time of his removal in 2001, the United States was the only country the defendant had ever known; he had virtually no ties to Mexico, his country of birth. He was brought to the United States as an infant, obtained his Legal Resident Status as a child, and was raised and educated in the United States. All of these facts clearly support an argument that it is plausible that he would have been granted cancellation of removal. However, as discussed below, the defendant's criminal history severely undercuts these facts supporting cancellation of removal.

Shortly after turning 18 years of age, the defendant started accumulating many arrests and convictions. His first arrest, for an offense called Failure to Identify, occurred in April 1997, a month after his 18th birthday. (Ex. 1 at ¶ 24.) He was convicted of this misdemeanor offense and sentenced to seven days in jail. (*Id.*) Several months later in September 1997, he was arrested and charge with Burglary of a Vehicle. (*Id.* at ¶ 25.) He pled guilty and was sentenced to 15 months probation. (*Id.*) He violated probation when he was arrested in April 1998 and charged with Theft.[6] (*Id.* at ¶ 26.) He pled guilty and was sentenced to 180 days in jail on this offense, and 180 days for the probation violation. (*Id.*) In February 1999, he was arrested for assaulting his common-law wife and charged with Assault-Family Violence. (*Id.* at ¶ 27.) He pled guilty to that offense and sentenced to 120 days in jail. (*Id.*) In September 1999, he was again arrested for assaulting his common-law wife and charged with Assault-Family Violence. (*Id.* at ¶ 38.) Those charges were dismissed at the request of the victim. (*Id.*) A month later in October 1999, he was arrested for assault, but the charges were ultimately

---

[6] In January 1998, the defendant was arrested and charged with being a minor in possession of alcohol. (Ex. 1 at ¶ 35.) He was assessed a fine and sentenced to time served. (*Id.*) In February 1998, he was arrested and charged with disorderly conduct. (*Id.* at ¶ 36.) He was assessed a fine and sentenced to time served. (*Id.*)

dismissed. (*Id.* at ¶ 39.) In February 2000, he was arrested and charged with possession of marijuana - - the offense that led to his 2001 removal. (*Id.* at ¶ 28.) He pled guilty to that offense on May 7, 2001, and sentenced to five years of probation.[7] (*Id.*) On June 19, 2001, the defendant was arrested for assault, and removal proceedings were initiated on June 26, 2001. (*Id.* at ¶ 40; Response to Motion to Dismiss at Ex. 1.) The June 19, 2001 assault charge was dismissed on December 21, 2001, the day after the defendant was ordered removed from the United States. (Ex. 1 at ¶ 40; Response to Motion to Dismiss at Ex. 2.)

The defendant's extensive criminal history, especially in such a short period of time, severely undercut his argument that it is plausible that he would have been granted cancellation of removal. His criminal history goes far beyond drug possession -- the conviction which was the predicate for his removal. It includes theft and burglary convictions, as well as repeated arrests (and one conviction) for assaultive conduct, including two assaults against his common-law wife. Simply put, with this track record, the defendant would have garnered little sympathy from an immigration judge deciding whether to grant discretionary, and fairly extraordinary, relief from removal. Thus, the Court finds that even if the removal order was defective, the defendant has not suffered prejudice because he has not shown that it is plausible that he would have been granted cancellation of removal.

Accordingly, the Court recommends that the motion to dismiss the indictment be denied for this reason as well.

Pursuant to 28 U.S.C. §636(b) and Rule 59(b)(2) of the Federal Rules of Criminal Procedure, any party may serve and file written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. No reply shall be filed unless leave is granted from the District Court. If objections are filed, the parties should

---

[7] In August 1999, the defendant was also arrested and charged with possession of marijuana. (*Id.* at ¶ 37.) That case was dismissed after the defendant was convicted of the marijuana possession offense referenced in text infra. (*Id.*)

- 11 -

use the following case number: **CR 17-00179-TUC-CKJ.**

Failure to file timely objections to any factual or legal determination of the Magistrate Judge in accordance with Fed. R. Crim. P. 59 may result in waiver of the right of review.

DATED this 25th day of September, 2017.

_____
Eric J. Markovich
United States Magistrate Judge